UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| NICOLE ROSE NICHOLAS, ) | No. CV 15-347-PLA |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION AND ORDER** |
| v. ) | |
| ) | |
| CAROLYN W. COLVIN, ACTING ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on January 16, 2015, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on March 17, 2015, and April 21, 2015. Pursuant to the Court's Order, the parties filed a Joint Stipulation on November 3, 2015, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

**II.**

**BACKGROUND**

Plaintiff was born on April 6, 1973. [Administrative Record ("AR") at 34, 138.] She has past relevant work experience as a cashier II; fast food worker; cafeteria counter attendant; waiter; day worker; women's apparel salesperson; and general administration clerk. [AR at 33-34, 70-71.]

On April 13, 2012, plaintiff filed an application for a period of disability and DIB, and an application for SSI payments, alleging that she has been unable to work since January 2, 2008. [AR at 23, 138.] After her applications were denied initially, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 23, 107.] A hearing was held on June 13, 2013, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 56-74.] A vocational expert ("VE") also testified. [AR at 70-73.] On July 2, 2013, the ALJ issued a decision concluding that plaintiff was not under a disability from January 2, 2008, the alleged onset date, through July 2, 2013, the date of the decision. [AR at 23-36.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 18-19.] When the Appeals Council denied plaintiff's request for review on November 21, 2014 [AR at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

**III.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's

decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted).  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 2, 2008, the alleged onset date.[1] [AR at 25.] At step two, the ALJ concluded that plaintiff has the following severe impairments:

> [M]orbid obesity, degenerative disc disease of the lumbar spine, pancreatitis, status post abdominal surgery for pelvic mass, hypertension, gastroesophageal reflux disease (GERD), history of ovarian cancer, and an adjustment disorder with depression.

[Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 27.]

---

[1]  The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2008. [AR at 25.]

4

The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b),[3] can perform posturals occasionally, and is limited to simple instructions and decisions. [AR at 28.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform any of her past relevant work as a cashier II; fast food worker; cafeteria counter attendant; waiter; day worker; women's apparel salesperson; or general administration clerk. [AR at 33-34, 72-73.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "cleaner, housekeeping" (Dictionary of Occupational Titles ("DOT") No. 323.687-014), and "marker" (DOT No. 209.587-034). [AR at 35, 72-73.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of January 2, 2008, through July 2, 2013, the date of the decision. [AR at 35-36.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when he: (1) assessed plaintiff's mental RFC; and (2) rejected plaintiff's subjective symptom testimony. [Joint Stipulation ("JS") at 4.]

As set forth below, the Court agrees with plaintiff and remands for further proceedings.

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

### A. MENTAL RFC

At step two, the ALJ found plaintiff has moderate difficulties in concentration, persistence, or pace. [AR at 27 (citing AR at 507-20); see also AR at 514 (adult psychiatric assessment form reflected that plaintiff exhibited "poor concentration/indecisiveness").] At step three, the ALJ found plaintiff has the severe mental impairment of adjustment disorder with depression. [AR at 25.] Plaintiff argues that although the ALJ's RFC assessment limited plaintiff to simple instructions and decisions due to her severe mental impairment, the ALJ also "accepted medical evidence" at step two that plaintiff has moderate difficulties with concentration, persistence, or pace, and those "difficulties are not subsumed in the limitation to simple instructions and decisions." [JS at 5 (citing AR at 27, 28; Varga v. Colvin, 794 F.3d 809 (7th Cir. 2015)).] Specifically, the ALJ stated that he relied on the evaluations performed at Didi Hersch Mental Health Services ("DHMHS"), found at Exhibit 11F of the Administrative Record, in finding that plaintiff had moderate difficulties in concentration, persistence, or pace. [AR at 27 (citing Exhibit 11F (AR at 507-20)).] Plaintiff complains that the ALJ erred because none of his hypotheticals to the VE included the ALJ's finding that plaintiff had moderate limitations in concentration, persistence, or pace. [JS at 4-5 (citing AR at 70-73).] She argues, therefore, that the ALJ's RFC assessment was not supported by substantial evidence. [JS at 5.]

Defendant counters that the mental health specialist who reviewed the record, Harvey Bilik, Psy. D., opined on September 27, 2012, after reviewing the DHMHS evaluations, that plaintiff had only mild difficulties in maintaining concentration, persistence, or pace. [JS at 8 (citing AR at 80-81, 91).] However, although Dr. Bilik may have reviewed the July 9, 2012, intake assessment [see AR at 80], the DHMHS evaluation that included the finding that plaintiff had "poor concentration/indecisiveness," was dated October 9, 2012 -- *after* Dr. Bilik's report. [AR at 514.] In fact, the ALJ gave Dr. Bilik's opinion "minimal weight" for this very reason, stating that Dr. Bilik did *not* have the benefit of the mental status evaluation relied on by the ALJ or the benefit of examining the evidence presented at the hearing. [AR at 32.] Moreover, although defendant contends that the ALJ's findings of severe mental impairment and resulting limitations were "highly accommodative" of plaintiff since the mental health evaluations performed at DHMHS showed only

"mild impairment" and "did not indicate that Plaintiff had significant limitations in regard to concentration, persistence or pace," the ALJ never made such statements -- rather, he *found* moderate limitations in concentration, persistence, and pace as a result of the evaluations conducted at DHMHS. [See AR at 27, 514 (October 9, 2012, evaluation finding that plaintiff exhibited "poor concentration/indecision").] Next, defendant argues that the preparer of Exhibit 11F is not "an acceptable medical source," and, therefore, the evaluations "could not be given any special or 'controlling weight.'" [JS at 10.] However, although the July 9, 2012, intake assessment appears to have been completed by a social worker and by a licensed marriage and family counselor [AR at 510-13], there is no indication as to the author of the October 9, 2012, evaluation noting "poor concentration/indecision," and the October 29, 2012, assessment was electronically signed by Dainius V. Mulokas, M.D. [AR at 508.] Again, however, the ALJ did not discount Exhibit 11F based on its preparers, and he *did* give Exhibit 11F some weight by finding plaintiff had moderate difficulties in concentration, persistence, or pace based on that Exhibit. [See AR at 27, 32.] The Court is "constrained to review the reasons the ALJ asserts," Brown-Hunter v. Colvin, __ F.3d __, 2015 WL 6684997, at *4 (9th Cir. Nov. 3, 2015) (citation omitted), and cannot consider post hoc reasoning by defendant, or even the evidence upon which the ALJ could have relied. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (noting that a reviewing court "is constrained to review the reasons the ALJ asserts" and finding error where the court affirmed the ALJ's decision "based on evidence that the ALJ did not discuss") (citing Pinto v. Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001)). In short, the Court finds defendant's arguments to be without foundation and, therefore, unpersuasive.

The issue here, therefore, is only whether the ALJ's RFC assessment, which limits plaintiff to light work allowing for "simple instructions and decisions," sufficiently translates the accepted medical evidence at step two[4] regarding plaintiff's moderate difficulties in concentration,

---

[4] At step two of the sequential evaluation process, the ALJ is tasked with identifying a claimant's "severe" impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Despite use of the term "severe," most circuits, including the
(continued...)

persistence, and pace, into functional limitations in the RFC. In a published decision, one district court in the Ninth Circuit recently found that a restriction to simple and repetitive tasks does not adequately incorporate moderate limitations in concentration, persistence, or pace found at step two. Lee v. Colvin, 80 F. Supp. 3d 1137, 1151 (D. Or. 2015). In Lee, the evidence showed that the claimant had moderate restrictions as to concentration, persistence, and pace, in that he was able to understand, remember, and carry out simple tasks, and would not be able to sustain attention/concentration for detailed tasks, but could for simple tasks. Id. The ALJ's hypothetical questions only inquired about jobs for someone who can "'understand, remember, and carry out only simple instructions that can be learned by demonstration' with 'little variance in assigned tasks from day to day.'" Id. The court found these limitations did not address the claimant's limitations in persistence or pace and the jobs identified by the VE might still require extensive focus or speed. Id. Similarly, as noted by the Ninth Circuit in Brink v. Comm'r Soc. Sec. Admin., 343 F. App'x 211 (9th Cir. 2009) -- a case relied on by the district court in Lee -- although the ALJ had accepted the claimant's moderate restrictions as to concentration, persistence, and pace, the ALJ failed to address these specific restrictions in the claimant's RFC and in his hypothetical questions, suggesting only a restriction to "simple, repetitive work." Brink, 343 F. App'x at 212. The court found that this restriction did not adequately capture the claimant's moderate restrictions as to concentration, persistence, or pace because the repetitive assembly-line work addressed by the VE might also require extensive focus and speed. Id.; see also Lubin v. Comm'r of Soc.

---

[4](...continued)
Ninth Circuit, have held that the step two inquiry is "a *de minimus* screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Accordingly, "[a]n impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on [a claimant's] ability to work.'" Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005) (citation omitted); see Soc. Sec. Ruling 85-28 (stating that "[a] claim may be denied at step two only if . . . a finding [that the relevant impairments are not medically severe] is *clearly established by medical evidence*") (emphasis added). The regulations direct an ALJ to find a mental impairment severe when a claimant suffers moderate limitations in activities of daily living, social functioning, or concentration, persistence, or pace, or has "more than a minimal limitation on [her] ability to do basic work activities." 20 C.F.R. § 404.1520a(c)(4). These four broad categories of function are also known as the "B criteria" because they generally appear in paragraph B of the Listing.

Sec. Admin., 507 F. App'x 709, 712 (9th Cir. 2013) (finding the ALJ erred by accepting the claimant had limitations as to concentration, persistence, or pace and then failing to include such limitations in the RFC and the hypothetical questions to the VE, which only limited Lubin to one- to three-step tasks).

The case relied on by defendant, Stubbs-Danielson v. Astrue, 539 F.3d 1169 (9th Cir. 2008), is inapposite. In that case the physician identified the claimant as having "slow pace, both in thinking & actions," but found she was still able to "carry-out simple tasks . . . ." Stubbs-Danielson, 539 F.3d at 1173. The ALJ in that case "translated" the physician's conclusions regarding pace and mental limitations into a restriction to "simple tasks," and the Ninth Circuit found that the ALJ's assessment of the claimant's concentration, persistence, or pace adequately incorporated the claimant's restrictions. Id. Thus, the medical testimony in Stubbs-Danielson did not establish any specific *restrictions* based on difficulty with concentration, persistence, or pace. Lee, 80 F. Supp. 3d at 1150-51 (citing Brink, 343 F. App'x at 212); see also Brink, 343 F. App'x at 212 (holding that Stubbs-Danielson does not apply when the medical evidence establishes limitations as to concentration, persistence, or pace).

The Court finds Lee, Brink, and Lubin to be analogous to the situation here, where the ALJ accepted that plaintiff had moderate restrictions as to concentration, persistence, and pace, but failed to address these limitations in plaintiff's RFC or in his hypothetical questions to the VE. [AR at 27, 71, 72.] Instead, the ALJ's RFC and hypotheticals only reflected a limitation to "simple instructions and decisions," which, as discussed in Lee, Brink, and Lubin, does not fully address plaintiff's moderate difficulties in concentration, persistence, and pace. Moreover, the jobs identified by the VE (marker and cleaner, housekeeping) although reflecting the ALJ's limitation to "simple instructions and decisions," might still require extensive concentration, persistence, and/or speed.

Based on the foregoing, the ALJ failed to adequately address plaintiff's moderate limitations as to concentration, persistence, and pace in plaintiff's RFC and in the hypothetical questions to the VE. Remand is warranted on this issue.

9

**B.    CREDIBILITY**

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony. [JS at 32.]

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if the claimant meets the first test, the ALJ may reject the claimant's testimony about the severity of his symptoms "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). Factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2013); 20 C.F.R. §§ 404.1529(c), 416.929(c).

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not find "affirmative evidence" of malingering [see generally AR at 25-33], the ALJ's reasons for rejecting a claimant's credibility must be specific, clear and convincing. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)); Brown-Hunter, 2015 WL 6684997, at *5. "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Burrell, 725 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (internal quotation marks omitted). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter,

10

2015 WL 6684997, at *5 (quoting Bunnell, 947 F.2d at 345-46). A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." Bunnell, 947 F.2d at 346. As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient. Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

In this case, the ALJ summarized plaintiff's subjective complaints. [AR at 29.] He then stated the following:

> Although the claimant has described daily activities that are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision. The claimant testified that she is able to take the bus to go to appointments or to the store shopping. She testified that she is able to take care of her personal care, does laundry once a month, cook twice a week, and dishes every week. Here, the claimant has described daily activities that are inconsistent with the claimant's allegations of disabling symptoms and limitations, which weakens her credibility.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

[AR at 29-30.] Next, the ALJ "[t]urn[ed] to the medical evidence," and stated that "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations resulting from" her severe impairments. [AR at 30.] He followed this statement with a thorough summary of the medical evidence. [AR at 30-33.] The ALJ concluded that "based on the entire record, including the testimony of the claimant, the . . . evidence fails to support the claimant's assertions of total disability." [AR at 33.]

The Court finds the ALJ's credibility determination to be virtually indistinguishable from the credibility determination rejected by the Ninth Circuit in Brown-Hunter. As in Brown-Hunter, the ALJ here "simply stated [his] non-credibility conclusion and then summarized the medical evidence supporting [his] RFC determination." Brown-Hunter, 2015 WL 6684997, at *6. Although the ALJ also summarized plaintiff's daily activities, he did not identify the testimony he found not credible

1 and "link that testimony to the particular parts of the record" supporting his non-credibility
2 determination.  Id.  In short, "[t]his is not the sort of explanation or the kind of 'specific reasons' we
3 must have in order to review the ALJ's decision meaningfully, so that we may ensure that the
4 claimant's testimony was not arbitrarily discredited," nor can the error be found harmless.  Id.
5 (rejecting the Commissioner's argument that because the ALJ set out his RFC and summarized
6 the evidence supporting his determination, the Court can infer that the ALJ rejected the plaintiff's
7 testimony to the extent it conflicted with that medical evidence, because the ALJ "never identified
8 *which* testimony [he] found not credible, and never explained *which* evidence contradicted that
9 testimony") (citing Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014),
10 Burrell, 775 F.3d at 1138).

11 Remand is warranted on this issue.

## VI.
## REMAND FOR FURTHER PROCEEDINGS

15 The Court has discretion to remand or reverse and award benefits.  McAllister v. Sullivan,
16 888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by further
17 proceedings, or where the record has been fully developed, it is appropriate to exercise this
18 discretion to direct an immediate award of benefits.  See Lingenfelter, 504 F.3d at 1041; Benecke
19 v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004).  Where there are outstanding issues that must
20 be resolved before a determination can be made, and it is not clear from the record that the ALJ
21 would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is
22 appropriate.  See Benecke, 379 F.3d at 593-96.

23 In this case, there are outstanding issues that must be resolved before a final determination
24 can be made.  In an effort to expedite these proceedings and to avoid any confusion or
25 misunderstanding as to what the Court intends, the Court will set forth the scope of the remand
26 proceedings.  First, because the ALJ failed to provide specific, clear and convincing reasons,
27 supported by substantial evidence in the case record, for discounting plaintiff's subjective symptom
28 testimony, the ALJ on remand shall reassess plaintiff's subjective allegations and either credit her

testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony.  Second, the ALJ shall reassess plaintiff's RFC in light of her moderate impairment in concentration, persistence, and pace.  Finally, the ALJ shall determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform given her RFC, including her moderate impairment in concentration, persistence, and pace.[5]

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  November 16, 2015

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[5]  Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to her past relevant work.